**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **MARVIN E. STALLINGS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. CIV-07-585-C** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of

the final decision of the Commissioner of the Social Security Administration (the

"Commissioner") denying his applications for disability insurance and supplemental security

income benefits.  Chief United States District Judge Robin J. Cauthron referred the matter

to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §

636(b)(1)(B).   The Commissioner has answered and filed the administrative record

(hereinafter Tr. ____).  As the parties have briefed their respective positions, the matter is

now at issue.  For the following reasons, it is recommended that the Commissioner's decision

be reversed and the matter remanded for further administrative proceedings consistent with

this Report and Recommendation.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance and supplemental security income

benefits on June 3, 2004, alleging a disability onset date of May 4, 2004.  Tr.47-49, 224-26.

The applications were denied at the administrative level on initial consideration and on reconsideration. Tr. 21, 22, 26-29, 31-33, 227, 228-31, 232, 233-35. Plaintiff requested a hearing before an administrative law judge which was held on June 14, 2006. Tr. 34, 266-315. Plaintiff appeared by telephone, being incarcerated at that time, and was represented by a non-attorney representative. Tr. 268, 272-310, 311-13. A vocational expert also testified at the request of the administrative law judge. Tr. 40, 310-11. The administrative law judge issued his decision on September 28, 2006, finding that Plaintiff was not disabled within the meaning of the Social Security Act and, therefore, he was not entitled to either disability insurance or supplemental security income benefits. Tr. 13-15, 16-20. The Appeals Council denied Plaintiff's request for review on March 22, 2007, and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 6-8.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted). The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751 & n. 2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given her age, education, and work experience. Id. at 751.

## III.  THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520 and § 416.920. Tr. 17-18. He first found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 18. At steps two and three, the administrative law judge found that Plaintiff suffers from a panic disorder and depressive disorder, and that these impairments though severe are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. Tr. 18. At the fourth step of the sequential evaluation process, the administrative law judge found that Plaintiff has the residual functional capacity (RFC) for a full range of medium, light, and sedentary exertional work only; that he is unable to climb ropes, ladders and scaffolds, and he is unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. Tr. 19. The administrative law judge found that Plaintiff is able to

understand, remember, and carry out simple to moderately detailed instructions in a work-related setting, and is able to interact with co-workers and supervisors under routine supervision.  Tr. 19.  He further found that Plaintiff was afflicted with symptoms from a variety of sources to include moderate chronic intermittent pain and fatigue and allied disorders, all variously described, that are of sufficient severity so as to be noticeable to him at all times, but nevertheless he is able to function within the above cited limitations. Tr. 19. Based upon this RFC, the administrative law judge found that Plaintiff could perform his past relevant work as a shop cleaner, grocery sacker, loader, and greenhouse worker.  Tr. 20. Thus, he found that Plaintiff was not disabled and was not entitled to benefits.  Tr. 20.

## IV.  DISCUSSION

### A.  ISSUES ON APPEAL

Plaintiff raises three errors on appeal, all related to the administrative law judge's step four analysis.  First, Plaintiff argues that the administrative law judge failed to articulate the weight assigned to the medical opinions in the record, and disregarded the opinion of the agency medical consultants that Plaintiff was precluded from work involving the general public.  Plaintiff's Opening Brief, p. 11.  Second, Plaintiff contends that the administrative law judge erred by concluding that his previous work as shop cleaner, grocery sacker, loader, and greenhouse worker qualify as past relevant work.  Id. at 13.  Finally, Plaintiff argues that even if his previous work qualifies as past relevant work, the administrative law judge erred in failing to undertake a function-by-function analysis of the demands of his past relevant work.  Id. at 14.

4

## A.  STEP FOUR ANALYSIS

As noted, all of Plaintiff's alleged errors concern the administrative law judge's analysis at step four of the sequential analysis.  Step four of the sequential analysis is comprised of three phases. <u>Winfrey v. Chater</u>, 92 F.3d 1017,1023 (10th Cir. 1996) (citations omitted). In the first phase, the administrative law judge  must evaluate a claimant's physical and mental residual functional capacity, and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work.  <u>Id.</u>  In the final phase, the administrative law judge determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. <u>Id.</u>  At each of these phases, the administrative law judge  must make specific findings. <u>Id.</u>

### 1.  Phase One - Failure to Discuss Agency Medical Consultants' Opinions

In phase one of the step four analysis, the administrative law judge must determine the claimant's RFC.  In this case, Plaintiff contends that the administrative law judge, in reaching his RFC determination, failed to articulate the weight given to the medical opinions of record – in particular, the opinions of the agency medical consultants.  Plaintiff's Opening Brief, p. 11.   Those consultants opined that Plaintiff lacked the ability to interact appropriately with the general public. Tr. 151-52, 183-84.  Plaintiff relies upon the recent Tenth Circuit Court of Appeals' decisions in <u>Haga v. Astrue</u> 482 F.3d 1205, 1208 (10th Cir. 2007) and <u>Frantz v. Astrue</u>  509 F.3d 1299, 1304 (10th Cir.  2007).

The Commissioner concedes that the administrative law judge did not "specifically discuss" the agency medical consultants' opinions, but submits that this was harmless error because the evidence does not conflict with the RFC determination.  Commissioner's Brief, p. 5.  The Commissioner notes that C.M. Kampschaefer, Psy.D., opined that Plaintiff could "understand and complete all simple and some complex tasks ... relate to co-workers and supervisors for work purposes only ... [c]annot interact appropriately with the general public ... [c]an adapt to a normal work week."  Id.  Thus, the Commissioner argues, the administrative law judge's RFC finding that Plaintiff could "understand, remember, and carry out simple to moderately detailed instructions in a work-related setting, and is able to interact with co-workers and supervisors, under routine supervision" is consistent with Dr. Kampschaefer's opinion.  Id.  The Commissioner also argues that by Plaintiff stating in his opening brief that "some of the [past] jobs . . . arguably required interaction with the public," he conceded that not all of them did, rendering him not disabled.  Id. at p. 6.  The undersigned is not persuaded, and believes the administrative law judge did indeed err at the first phase of the step four analysis.

In the two recent decisions cited by Plaintiff, the Tenth Circuit has made it clear that the administrative law judge is not to pick and choose from the medical opinions before him, and that the Court is not to engage in a post hoc effort to salvage a decision that suffers from such a defect.  In Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007), (a step five case) the administrative law judge implicitly adopted three out of seven moderate restrictions imposed

by a consultative mental health examiner, and ignored the remaining four without comment.

In reversing, the Tenth Circuit reiterated:

> An [administrative law judge] is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. See, e.g., Robinson, 366 F.3d at 1083; Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir.2004). Although the government is correct that the [administrative law judge] is entitled to resolve any conflicts in the record, see Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991), the [administrative law judge] did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the [administrative law judge] adopted some of Dr. Rawlings' restrictions but not others.

Haga, 482 F.3d at 1208. Likewise, Dr. Kampschaefer concluded that Plaintiff suffered from marked limitations in the ability to "interact appropriately with the general public," Tr. 151, and at the conclusion of the mental residual functional capacity assessment stated: "Can understand & complete all simple and some complex tasks. Can relate to co-workers & supervisors for work purposes only. Cannot interact appropriately with the general public. Can adapt to a normal work week." Tr. 152. Margaret McKinney, Ph.D. also found Plaintiff markedly limited in his ability to interact appropriately with the public, and stated "This person is able to understand, remember, and carry out simple instructions and some, but not all, more complex instructions. He is able to relate to co-workers and supervisors on a superficial level as required for work, but should not be expected to deal with the general public." Tr. 183, 184.

In Haga, the the doctor concluded that the claimant had suffered from moderate limitations in the ability to:

- understand, remember, and carry out detailed instructions,
- deal with the general public,
- interact appropriately with supervisors and coworkers, and
- respond appropriately to workplace pressures and changes.

Id. at 1207.  The administrative law judge's RFC assessment reflected some of the limitations, but not others.  The appeals court stated:

> By including in his RFC determination that [the claimant] was limited to "simple, repetitive tasks" with "only incidental contact with the public" and "no requirement for making change," the [administrative law judge] apparently accepted that [the claimant] [was] not able to "[ u]nderstand and remember detailed instructions," "[c]arry out detailed instructions," or "[i]nteract appropriately with the public," all categories that [mental health examiner] marked as moderately impaired.

Id. at 1208 (citations omitted).  But the administrative law judge in Haga failed to explain his apparent rejection of the limitations involving the plaintiff's ability to deal with supervisors, coworkers, and workplace pressures and changes.  Id.  As a result, the Tenth Circuit Court of Appeals concluded "that the [administrative law judge] should have explained why he rejected four of the moderate restrictions on [the physician's] RFC assessment while appearing to adopt the others."  Id. (citation omitted).

Haga compels reversal and remand.  As in Haga, the administrative law judge here adopted some of the restrictions assessed by the agency physician.  But without explanation, the judge failed to address Dr. Kampschaefer's and Dr. McKinney's limitation involving Plaintiff's ability to deal with the general public.  The Haga court held that such selectivity constitutes reversible error, and the same is true here.  Frantz v. Astrue, 509 F.3d 1299, 1302-1303 (10th Cir. 2007) ( reversing for reconsideration of mental RFC evidence under

Haga when the administrative law judge had discussed some of the limitations identified by a doctor, but had omitted others without any explanation). See also 20 C.F.R. § 404.1527(f); 20 C.F.R. § 416.927(f).

The Commissioner's argument that the administrative law judge's error is harmless because his RFC finding is consistent with a limitation precluding interaction with the general public is untenable. This Court is not to create or adopt post-hoc rationalizations to support the administrative law judge's decision that are not apparent from the decision itself. Haga, 482 F.3d at 1207-1208; see, e.g., Allen v. Barnhart, 357 F.3d 1140, 1142, 1145 (10th Cir.2004) (holding that district court's "post hoc effort to salvage the [administrative law judge's] decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process"); see also Robinson v. Barnhart, 366 F.3d 1078, 1084-85 (10th Cir.2004) (per curiam) (same). In those cases in which harmless error has been applied "in none of them did this court hold an [administrative law judge's] failure to make a dispositive finding of fact harmless ...."[1] Allen, 357 F.3d at 1145. In this case there simply is no finding regarding the administrative law judge's treatment of the opinion of the agency medical consultants. The administrative law judge apparently adopted some of their limitations, and not others, without comment.

---

[1]"[I]t nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the [administrative law judge] did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way. Allen v. Barnhart, 357 F.3d at 1145. This exception is clearly not applicable here, where as will be discussed, infra, the ability to interact with the public may or may not be a function of Plaintiff's past relevant work.

**2.   Phase Two - The Identification of Plaintiff's Past Relevant Work and Function by Function Analysis**

As his second and third claims of error, Plaintiff contends that the administrative law judge failed to adequately identify his "past relevant work" and failed to perform a function-by-function analysis of his work  – instead only generally characterizing it by skill and exertional level.   Plaintiff's Opening Brief, p. 13-15. Plaintiff claims that the only job identified as past relevant work at the initial and reconsideration stages was that of fork lift operator.  Id. at 14.  He further claims that the administrative law judge may not rely upon generic job descriptions at step four where the claimant has a mental impairment.  Plaintiff's Opening Brief, p. 15; Plaintiff's Reply Brief, p. 9.

The Commissioner responds that the administrative law judge found that the past relevant work was unskilled, and that an unskilled job can usually be learned in thirty days. Brief of Commissioner, p. 8.  He contends that Plaintiff's own work history report supports a conclusion that he worked more than thirty days as a grocery stocker, shop cleaner, and greenhouse worker.  Id. at 8-9.  The Commissioner also contends that the earnings were enough to qualify as substantial gainful activity.  Id.

In determining whether a claimant's past work experience qualifies as past relevant work, the administrative law judge considers whether the work was performed within the last fifteen years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity. See 20 C.F.R. §§ 404.1565(a); 416.965(a). The regulatory definition of substantial gainful activity (SGA) for purposes of determining a claimant's past relevant work is "work

activity that involves doing significant physical or mental activities."   20 C.F.R. §§404.1572(a), 416.972(a).   The regulations further provide that work is generally not considered SGA if the claimant was "forced to stop [working] ... after a short time because of [an] impairment . . . ."  20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).  See also Soc. Sec. Rul. 84-25, 1984 WL 49799 (describing criteria for determining SGA as opposed to unsuccessful work attempt).  Between January 1990 and June 1999, monthly earnings averaging more than $500.00 per month "will ordinarily show" SGA under the regulatory guidelines, and between July 1999 and December 2000, monthly earnings averaging more than $700.00 per month ordinarily shows SGA. 20 C.F.R.  §§ 404.1574(b)(2)(I) (Table 1); 416.974(b)(2)(I) (Table 1).   The Social Security Administration's Program Operations Manual shows the following amounts to be SGA for the years 2001-2004:  In calendar year 2001, $740; in calendar year 2002, $780; in calendar year 2003, $800; in calendar year 2004, $810.   Social Security Online (www.socialsecurity.gov), POMS Section DI 10501.015, https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015!opendocument (accessed Apr. 15, 2008). According to Plaintiff's calculation, his employment as a grocery stocker, based upon his employment at Boys Market in 1999, resulted in average monthly earnings of $412, below either the $500 amount in effect until July of 1999, and well below the $700 amount in effect after that time. Plaintiff's Reply Brief, p. 7.  Plaintiff makes a similar argument with regard to the job of greenhouse worker.  He claims that his work at Wal-Mart resulted in monthly earnings of $742 – two dollars over the SGA amount – if you take the estimate of four months employment to be four months exactly.  Plaintiff's Reply Brief, p. 8.  However,

Plaintiff notes that there are not specific dates listed for his employment, and another week of employment could affect the average.  Id.    The undersigned agrees that the record contains an inadequate discussion and findings regarding Plaintiff's past relevant work to facilitate this Court's review.  The Tenth Circuit Court of Appeals faced a similar obstacle in Ogle v. Barnhart, No. 04-6129, 123 Fed.Appx. 361 (10th Cir. Feb. 18, 2005), where the only evidence was a listing of annual income for the claimant's work as a dog groomer:

> The record contains almost no information about Ms. Ogle's work experience as a dog groomer and business owner. The [administrative law judge] did not elicit any testimony on the topic. The only evidence is found in her brief statement, quoted above, that she owned the shop and kept daily and tax records. Id. at 95. This scant evidence could not permit the [administrative law judge] to evaluate whether Ms. Ogle's dog groomer job qualified as substantial gainful activity, either as an employee or a self-employed person. See 20 C.F.R. § 404.1574(b)(6) (stating that where employee's earnings were too low to qualify as substantial gainful employment, but too high to meet the presumption that the work did not qualify, other information must be considered); id. § 404.1575 (explaining how to evaluate self-employment). On remand, the [administrative law judge] should develop the record sufficiently to permit him to ascertain whether Ms. Ogle's past work in the dog-grooming business qualified as substantial gainful activity. If he determines it did qualify, the [administrative law judge] should explain his analysis. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.1995) (holding "administrative agencies must give reasons for their decisions") (quotation omitted).

Ogle, 123 Fed.Appx. at 364.[2]  The sum total of the discussion regarding Plaintiff's work is the finding that he "is capable of performing past relevant work as a shop cleaner, grocery sacker, loader, and greenhouse worker."  Tr. 20.  Following the finding, the administrative law judge adds this summary of the vocational expert's testimony: "The vocational expert

---

[2]However, in Ogle, the claimant was denied benefits at step 5 where it became the Commissioner's burden to show that she could perform other work existing in significant numbers in the national economy.

testified that the claimant's past work as a shop cleaner, grocery sacker, loader, and greenhouse worker were unskilled and classified as medium to heavy in exertion."  Tr. 20. The slightly over one page of vocational expert testimony includes the following qualifiers in describing Plaintiff's past work: "for a period of time," "brief, very briefly worked," "did some work," and "some very brief work." Tr. 310-11.  Yet, the administrative law judge did not inquire further of the vocational expert.  The administrative law judge's interrogation of Plaintiff also left almost as many questions unanswered as it resolved.  For example, Plaintiff stated that he was fired from his job at Wal-Mart because he "wasn't doing the job right and ... wasn't meeting their standards," but the administrative law judge did not inquire as to how long Plaintiff was employed, or whether his termination was related to his impairment.  Tr. 293.[3]  Even the administrative law judge's question as to whether the employment there was part-time or full-time was answered by Plaintiff "Part, full time," and this was not clarified. Tr. 293.  Plaintiff went on to describe his various brief employment experiences, all of which ended in termination.  Tr. 293-96.  Therefore, in addition to the issue of earnings, there may also be an issue of whether Plaintiff was forced to stop working, resulting in an unsuccessful work attempt.  See 20 C.F.R. §§ 404. 1574(a)(1); 416.974(a)(1).  There is simply not enough in the record to review.

Even if the undersigned were able to tell which of the past jobs identified were past relevant work as defined by the regulations, the administrative law judge also failed to

---

[3]This lack of follow-up was undoubtedly caused by the fact that the administrative law judge did not find Plaintiff credible.  See Tr. 285-92, 298-99, 303, 309.

develop the evidence as to the mental demands of Plaintiff's past relevant work or to make specific findings at phase three, as is required at each stage of the step four analysis. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir.1996).

Here, the administrative law judge asked Plaintiff very few questions regarding his past work, and none were apparently designed to or elicited any information regarding the mental demands of those jobs.  <u>See</u> Tr. 293-96.  Plaintiff's work history report also sheds little light on the issue, asking three questions that arguably concern some of the mental demands of any job: whether other people were supervised, and how many; whether the claimant hired and fired; and whether the claimant was a "lead worker."  Tr. 67.  Plaintiff in this case responded negatively to these questions with regard to all of his previous work.  Tr. 67-71.  Finally, the administrative law judge did not elicit any information from the vocational expert regarding the mental demands of Plaintiff's past relevant work. Although the vocational expert did identify Plaintiff's past jobs, give the required exertional level and specific vocational preparation time, and even went so far as to give the code from the Dictionary of Occupational Titles, the vocational expert was never asked to give an opinion as to whether someone with Plaintiff's RFC could perform the mental or other demands of those jobs.  In a similar case, the Tenth Circuit Court of Appeals noted:

> As noted by Ms. Bowman, all of her past jobs require frequent or constant "handling," which is defined as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands," and, at the very least, this means that she must be able to perform such handling activities "from 1/3 to 2/3 of the time" during a normal workday....  After the [vocational expert] identified the appropriate DOT Codes for Ms. Bowman's prior jobs, the [administrative law judge] could have taken administrative notice of this job information, and then

14

asked the [vocational expert] to give an opinion concerning whether Ms. Bowman's limited use of her left hand would affect her ability to perform the required handling activities. The [administrative law judge] did not pursue such an inquiry, however, and did not otherwise make the necessary findings at phases two and three of the step-four analysis. As a result, we must remand this case to the Commissioner for further proceedings regarding phases two and three of step four and, if necessary, step five.

Bowman v. Astrue  511 F.3d 1270, 1273 (10th Cir. 2008).

In this case, there is simply not enough information to review the administrative law judge's step four determination.  There is not any mention of the marked impairment in Plaintiff's ability to deal with the general public in the administrative law judge's RFC finding, or any discussion of the opinions of the medical consultants.  There is some question as to which, if any, of the past work identified by the administrative law judge would qualify as past relevant work due to the possibility that it was not performed at SGA levels.  Finally, there is no identification of the mental demands of Plaintiff's past work, or any comparison of those demands to the RFC finding of the administrative law judge - which includes some mental limitations.  Accordingly, there is no alternative but to reverse and remand this matter for further administrative proceedings.[4]

### **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the

---

[4]In light of this recommendation, it is unnecessary to address Plaintiff's other claims of error. However, the undersigned notes that the administrative law judge did incorrectly refer to Plaintiff's competency examiner as a psychiatrist and "Dr." when he was clearly was not. See Plaintiff's Opening Brief, p. 12.

15

parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of Social Security Administration be reversed and the matter be remanded for further administrative proceedings consistent with this Report and Recommendation.  The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by May 15, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 25th day of April, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE